UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN LUIS OBISPO COASTKEEPER, et al.,

        Plaintiffs/Petitioners,

    v.

U.S. DEPARTMENT OF THE INTERIOR, et al.,

        Defendants/Respondents.

Case No. 19-cv-00177-EMC

**ORDER GRANTING FEDERAL DEFENDANTS' MOTION TO DISMISS AND REMANDING CASE TO STATE COURT; AND DENYING PETITIONERS' MOTION TO AMEND THE COMPLAINT**

Docket Nos. 15, 29

      The present case was removed from Santa Clara County Superior Court after the U.S. Department of Interior ("DOI"), the Bureau of Reclamation ("BOR"), and Brenda Burman, the Commissioner of the BOR[1] ("the Federal Defendants") were added as necessary parties to this action. Pets.' RJN, Ex. B (Order at 7).[2] San Luis Obispo Coastkeeper and Los Padres Forestwatch ("Petitioners") bring this action "to allow sufficient water flows in the Santa Maria River to maintain fish stocks in good condition as required by [California] Fish and Game Code § 5937." Opposition to Defendants' Motion to Dismiss ("Opp'n") at 6. To maintain fish stocks, Petitioners want the Federal Defendants to adjust its release of water to achieve sufficient water flows for Steelhead to maintain fish stocks.

---

[1] Ms. Burman has been sued in her official capacity. *See* Mot. at 7 n.3 ("Although the Petition purports to name Commissioner Burman as a Respondent in her personal capacity, counsel for Petitioners have subsequently confirmed in writing that they have named her as a Respondent only in her official capacity.").

[2] Petitioners' unopposed request for judicial notice of the Order Granting Stipulated Petition to Coordinate Cases; Case No. 1997-1-CV-770214 and the Order Re Respondent Santa Maria Valley Water Conservation District's General and Special Demurrer, without prejudice; Case No. 1997-1-CV-770214 is **GRANTED**.

The Federal Defendants argue they have not waived sovereign immunity to be sued in this case. Petitioners contend that the McCarran Amendment applies to this action thereby waiving sovereign immunity.

For the reasons explained herein, the Court finds that the circumstances presented here do present a waiver of sovereign immunity under the McCarran Amendment, and thus the Federal Defendants must be dismissed for lack of subject matter jurisdiction. As the joinder Federal Defendants were the only basis for jurisdiction, the Court remands the remainder of the proceeding to state court.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Petitioners initially filed their case in the Santa Barbara Superior Court in 2017. At that time, the only Respondent named was the Water District. Apparently, the parties stipulated to coordinate their case with several existing cases known as the *Santa Maria Groundwater Litigation*, pending in the Santa Clara Superior Court since 1997. The stipulation was granted. Petitioners' case and the *Santa Maria Valley Groundwater Litigation* were coordinated into Judicial Council Coordination Proceeding No. 4948 (*Twitchell Dam Cases*), and Petitioners' case was transferred to the Santa Clara Superior Court. *See* Pets.' RJN, Ex. A (order granting stipulated petition to coordinate).

In 2018, the Santa Clara Superior Court ruled on a demurrer filed in this suit by the Water District. The Water District argued that the BOR was "an indispensable party because [it] is the 'owner' of the dam as well as the holder of a construction and operation contract that prohibits [the Water District] from disposing of and/or releasing water 'for use outside the District' without prior consent of the [BOR]." Pets.' RJN, Ex. B (Order at 5). The superior court held that the BOR "has a significant interest in the operation of the Twitchell Dam and the outcome of this litigation and [thus] should be joined as a party." Pets.' RJN, Ex. B (Order at 7). Accordingly, in an amended petition, Petitioners added the BOR as a respondent to the case at bar. Thereafter, the BOR filed a notice of removal to federal court. *See* 28 U.S.C. § 1442 (providing that "[a] civil action . . . that is commenced in a State court and that is against [the United States or any agency thereof or any officer] may be removed by them to the district court of the United States").

2

1    Currently pending before the Court is the Federal Defendants' motion to dismiss. The

2 Federal Defendants contend that they have sovereign immunity from Petitioners' action which

3 asserts only state law claims.

4    The issue of sovereign immunity in this case draws from the context of other litigation

5 which were coordinated with the suit at bar. That context is described below.

6 A.   <u>Santa Maria Project: Twitchell Dam and Reservoir</u>

7    In 1954, Congress passed a law authorizing the Secretary of the DOI "to construct [a]

8 project for irrigation and the conservation of water, flood control, and for other purposes, on Santa

9 Maria River." Jackson Decl., Ex. A (Public Law 774). A BOR fact sheet on the Santa Maria

10 Project describes the project as follows: "A joint water conservation and flood control project, it

11 consists of the Twitchell Dam where construction began in July 1956 and was completed in

12 October 1958." Jackson Decl., Ex. A (Fact Sheet at 1). The dam

13
14
15
16

> is located on the Cuyama River about 6 miles upstream from its junction with the Sisquoc River. The dam regulates flows along the lower reaches of the river and impounds surplus flows for release in the dry months to help recharge the ground-water basin underlying the Santa Maria Valley, thus minimizing discharge of water to the sea at Guadalupe.

17 Jackson Decl., Ex. A (Fact Sheet at 1). The affiliated Twitchell Reservoir

18
19
20
21
22

> stores flood-waters of the Cuyama River for release as needed to recharge the ground-water basins, preventing saltwater intrusion. All water used within the area is obtained by pumping from the ground-water reservoirs. Twitchell Reservoir impounds winter floodwaters for later release down the river channel at a predetermined rate to permit maximum percolation into the ground-water basins; from these ground-water basins individual landholders pump water according to their needs.

23 Jackson Decl., Ex. B (Fact Sheet at 1).

24 B.   <u>Contract Related to Water Rights and Operation of Dam</u>

25    In 1956 the BOR and the Santa Barbara County Water Agency entered into a contract

26 regarding construction of the Santa Maria Project. *See* Jackson Decl., Ex. D (Contract ¶ 1(b))

27 (defining the project as the Twitchell Dam and Reservoir "as authorized by the Act of Congress of

28 September 3, 1954 . . . , and related and appurtenant works and equipment").

The contract provided that the BOR would commence construction of the Twitchell Dam and Reservoir:

> Provided, That in no event shall the United States be obligated to commence construction or perform any other act in pursuance of this contract until and unless water rights for project purposes satisfactory to the Secretary of the Interior have been acquired or assured and a permit or permits in terms satisfactory to the Secretary of the Interior shall have been issued by the Division of Water Resources of the Department of Public Works of the State of California for the appropriation of unappropriated water with reasonable assurances and commitment satisfactory to the Secretary of Interior for the ultimate issuance of an appropriate license or licenses.

Jackson Decl., Ex. D (Contract ¶ 2(c)).

The contract also provided that,

> [s]ubject to the prior right of the United States to utilize the works for flood control purposes, the satisfaction of existing vested rights, and compliance by the Agency and the [Water] District with the terms of this contract, **the Agency**, upon behalf of the [Water] District, **shall have the perpetual right to use all water that becomes available** through the construction and operation of the Project. Subject to the operation of the Project works for flood control purposes, the United States shall, during the time that the Project works are being operated and maintained by the United States, release water from the Project works for the use and benefit of the District in accordance with written schedules submitted by the [Water] District on forms prescribed by the United States.

Jackson Decl., Ex. D (Contract ¶ 6) (emphasis added).

In addition, the contract provided that,

> [u]pon the completion of the Project, . . . the United States will transfer to **the Agency** the **care, operation and maintenance of the [Twitchell] Dam and Reservoir** and real and personal property used or useful for operation and maintenance of the Project and owned by the United States in connection with the Project.

Jackson Decl., Ex. D (Contract ¶ 7(a)) (emphasis added).

Consistent with the above contract, the state of California gave the BOR a license – *i.e.*, "a right to the use of the water of Cuyama River in San Luis Obispo and Santa Barbara Counties . . . for the purpose of irrigation, domestic, salinity control, municipal, industrial and recreational uses." Jackson Decl., Ex. C (License for Diversion and Use of Water, issued by The State Water Resources Control Board). The license also provided that,

4

> [s]ubject to the prior right of the United States to utilize the project works for flood control purposes, the satisfaction of existing water rights, and compliance by the public agencies concerned with any and all present and future contract obligations with the United States regarding the Santa Maria Project, the **Santa Barbara County Water Agency, on behalf of the [Water] District and its landowners, shall**, consistent with other terms of this license, **have the perpetual right to use all water that becomes available** through the operation of the Twitchell Dam and Reservoir . . . .

Jackson Decl., Ex. C (emphasis added); *see also City of Santa Maria v. Adam*, 211 Cal. App. 4th 266, 280 (2012) (explaining that, "[b]ecause river water is surface water, the [BOR] had to obtain a license from the State Water Resources Control Board . . . to appropriate the seasonal flows of the Cuyama River"; adding that the Water District "was formed and given the perpetual right to use the water the project made available").

C.     Santa Maria Valley Groundwater Litigation

As noted above, the Twitchell Dam "regulates flows along the lower reaches of the river and impounds surplus flows for release in the dry months to help recharge the ground-water basin underlying the Santa Maria Valley." Jackson Decl., Ex. A (Fact Sheet at 1). Once the water from the Project reaches the groundwater, the Agency on behalf of the Water District and its landowners have the right to use all such water. In 1997, litigation began related to the rights of competing landowners to groundwater contained in the Santa Maria Valley Groundwater Basin (*i.e.*, the *Santa Maria Valley Groundwater Litigation*).

"The Basin . . . is a coastal groundwater basin underlying about 163,700 acres that straddle the line between Santa Barbara and San Luis Obispo Counties. . . . [It] is the principal source of water for thousands of residents and landowners." *Santa Maria*, 211 Cal. App. 4th at 280. There are three sources of groundwater for the Basin:

> native groundwater (rainfall, natural infiltration from lakes and streams, and other natural inflows), return flows (imported water that is used on the surface which then percolates into the Basin), and salvaged water (water that would have wasted to the sea during the rainy season but for the dams and reservoirs that capture and save it). Return flows in the Basin are derived from State Water Project (SWP) water imported by several of the public water producers. Salvaged water is contributed by the Twitchell Dam and Reservoir in the Santa Maria Valley area and the Lopez Dam and Reservoir in the Northern Cities area.

1  *Id.*

2      The 1997 litigation began when the Water District sued several public water producers

3  (local cities and water companies) in "an effort to adjudicate rights in Basin groundwater." *Id.* at

4  282. "Subsequent complaints or cross-complaints brought in other public water producers . . . and

5  most landowners . . . who claimed a right to Basin groundwater." *Id.* At some point, the litigation

6  was consolidated in Santa Clara Superior Court and became known as the *Santa Maria Valley*

7  *Groundwater Litigation*.

8      The case

9          was tried in five phases. . . .

10         Before the phase IV trial commenced, the public water producers
11         and most of the landowners entered into the Stipulation [*i.e.*, a
           settlement agreement]. . . . [T]he Stipulation gives the stipulating
           parties the same rights in groundwater that they would have under
12         the common law . . . .

13         The Stipulation [also] contains a physical solution dividing the
           Basin into three management areas corresponding to the three
14         hydrological subareas. It sets forth detailed criteria for monitoring
           and managing groundwater in each management area . . . . As to
15         each of the three management areas, the Stipulation describes the
           factors used to identify a water shortage and the responses that must
16         be taken. The Stipulation provides for continuing judicial oversight.

17         The Santa Maria Valley management area is the largest of the three
           management areas . . . The groundwater management plan for this
18         area focuses upon the Twitchell project and calls for the creation of
           the Twitchell Management Authority (TMA), the members of which
19         are the [Water District], Santa Maria, [a water company],
           Guadalupe, and stipulating landowners located within [Water]
20         District boundaries. The Stipulation specifies that, on average, the
           Twitchell project adds 32,000 acre-feet per year to the Basin. The
21         Stipulation refers to this volume as the "Twitchell Yield" and
           allocates 100 percent of the Twitchell Yield to the TMA members. .
22         . . In exchange, the TMA is obligated to employ a management area
           engineer to prepare an annual report analyzing water supply and
23         demand. The TMA must also engage an engineering consultant to
           develop "an integrated operation and maintenance procedure
24         manual" for the Twitchell project and "provide recommendations
           for capital and maintenance projects" to maximize recharge of the
25         Basin . . . .

26  *Id.* at 282-83.

27      The court ultimately approved the "physical solution" as well as

28          the allocation of the Twitchell Yield as set forth in the Stipulation,

6

> explaining that during years there is a surplus, "all water users have the right to use the water as overlying owners or appropriators." During times of shortage, when there is no surplus, the [Water] District "may regulate and allocate the appropriated water consistent with its contract and under the terms of the License" as allowed by Water Code sections 74501, 74526, and 74592.

*Id.* at 284.

The court "entered a single judgment on January 25, 2008, incorporating the Stipulation." *Id.* at 285; *see also* Scharf Decl., Exs. A-B (Stipulation and judgment).

Subsequently, landowners who did not sign the Stipulation filed an appeal. The appellate court, in essence, affirmed in part and reversed in part. *See Santa Maria*, 211 Cal. App. 4th at 277. In affirming, the appellate court noted, *inter alia*, that "[t]he trial court properly exercised its equitable powers to approve the physical solution proposed by the stipulating parties." *Id.* The appellate court also stated that "[t]he trial court did not err in approving the stipulating parties' allocation of return flows and salvaged water." *Id.* On remand, the trial court entered an amended judgment consistent with the appellate court's rulings. *See* Scharf Decl., Ex. C (amended judgment, filed in April 2014). The trial court retained jurisdiction to make orders enforcing the rights of the parties in accordance with the judgment. *See* Scharf Decl., Ex. C (Amended Judg. ¶¶ 7, 11).

Significantly, neither the BOR nor any agency of the federal government were named as parties to or took part in the *Santa Maria Valley Groundwater Litigation*. That litigation concerned the competing claims over groundwater rights affecting water after released from the Twitchell Dam. No agency of the federal government claims any right to the groundwater.

D. Petitioners' Lawsuit

Petitioners herein initially filed their case in the Santa Barbara Superior Court in 2017 and stipulated to coordinate, but not consolidate, their case with the *Santa Maria Groundwater Litigation*. Petitioners' case and the *Santa Maria Valley Groundwater Litigation* were then coordinated into Judicial Council Coordination Proceeding No. 4948 (the *Twitchell Dam Cases*), and Petitioners' case was transferred to the Santa Clara Superior Court. *See* Pets.' RJN, Ex. A (order granting stipulated petition to coordinate).

Petitioners bring this cause of action to release sufficient water flows from the Twitchell

7

1 Dam to maintain fish stocks in good condition. They bring this action under California Fish and

2 Game Code § 5937 which provides

> The owner of any dam shall allow sufficient water at all times to pass through a fishway, or in the absence of a fishway, allow sufficient water to pass over, around or through the dam, to keep in good condition any fish that may be planted or exist below the dam. During the minimum flow of water in any river or stream, permission may be granted by the department to the owner of any dam to allow sufficient water to pass through a culvert, waste gate, or over or around the dam, to keep in good condition any fish that may be planted or exist below the dam, when, in the judgment of the department, it is impracticable or detrimental to the owner to pass the water through the fishway.

9 In 2018, the Santa Clara Superior Court ruled on a demurrer filed by the Water District

10 which asserted that the BOR was "an indispensable party" to the case. Pets.' RJN, Ex. B (Order at

11 5). The superior court held that the BOR "has a significant interest in the operation of the

12 Twitchell Dam and the outcome of this litigation and [thus] should be joined as a party." Pets.'

13 RJN, Ex. B (Order at 7).

> It is not apparent from documents subject to judicial notice that the [BOR] owns the Twitchell Dam. [The Water District's] arguments in this regard are more suited to an evidentiary motion [instead of a demurrer]. Nevertheless, even Petitioners acknowledge the Stipulation in the *Santa Maria Valley Water Conservation District* case requires the Twitchell Project to be managed "in accordance with the requirements of the [BOR] . . . ."

18 Pets.' RJN, Ex. B (Order at 6-7) (citing Stipulation ¶ V(D)(1)(b)); *see also* Scharf Decl., Ex. A

19 (Stipulation ¶ V(D)(1)(b)) (providing that "[a]ll Twitchell Project operations . . . will be performed

20 consistent with the following parameters . . . : [*inter alia*] Operate the Twitchell Project in

21 accordance with the requirements of applicable law including, without limitation, the requirements

22 of the [BOR] and Army Corps of Engineers").

23 Accordingly, in an amended petition, Petitioners added the BOR as a respondent. The

24 Federal Defendants were *not* added as a party to the *Santa Maria Valley Groundwater Litigation*.

25 The BOR filed a notice of removal of the instant case to federal court. *See* 28 U.S.C. § 1442

26 (providing that "[a] civil action . . . that is commenced in a State court and that is against [the

27 United States or any agency thereof or any officer] may be removed by them to the district court

28 of the United States").

8

# II.    DISCUSSION

A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

Petitioners have sued the BOR in the case at bar because they were required to include it as a respondent. The state court granted the Water District's request to include the Federal Defendants because Petitioners were challenging the operation of Twitchell Dam. As noted above, the Petition seeks to release sufficient water flows from the Twitchell Dam to allow Steelhead to spawn. Petitioners contend that Defendants are presently violating California environmental laws. The Petition does not bring any challenges based on federal law.

The BOR asserts that it cannot be sued because it has sovereign immunity. "A sovereign immunity defense is 'quasi-jurisdictional' in nature and may be raised in either a Rule 12(b)(1) or 12(b)(6) motion." *Sato v. Orange Cty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017). As the parties have asked the Court to consider documents outside the four corners of the complaint, it construes the motion as a factual attack, not just a facial attack.

1.    Sovereign Immunity Waiver in the McCarran Amendment

Petitioners do not dispute that, as a general matter, the Federal Defendants has sovereign immunity from suit based on California state law. *See United States v. Bormes*, 568 U.S. 6, 9 (2012). They argue, however, that Congress expressly waived sovereign immunity in the McCarran Amendment.

The McCarran Amendment is codified at 43 U.S.C. § 666. It provides in relevant part as follows:

> (a) Joinder of United States as defendant; costs. Consent is hereby given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances: Provided, That no judgment for costs shall be entered against the

9

United States in any such suit.

43 U.S.C. § 666. Courts "construe any ambiguities in the scope of a waiver in favor of the sovereign." *FAA v. Cooper*, 566 U.S. 284, 290-91 (2012).

The McCarran Amendment is "not intended . . . to be used for any other purpose than to allow the United States to be joined in a suit wherein it is necessary to adjudicate all of the rights of various owners on a given stream. This is so because unless all of the parties owning or in the process of acquiring water rights on a particular stream can be joined as parties defendant, any subsequent decree would be of little value." *United States v. Dist. Court In & For Eagle Cty., Colo.*, 401 U.S. 520, 525 (1971) (quoting Senator McCarran, Chairman of the Committee reporting on the bill).

As to (a)(2) the Supreme Court has clarified that "'the administration of such rights' in § 666 (a)(2) must refer to the rights described in (1) for they are the only ones which in this context 'such' could mean; and as we have seen they are all-inclusive, in terms at least." *Id.* at 524. In other words, subsection (a)(2) pertains to the administration of adjudicated rights under subsection (a)(1). The "administration" of such rights means "to execute it, to enforce its provisions, to resolve conflicts as to its meaning, to construe and to interpret its language. Once there has been such an adjudication and a decree entered, then one or more persons who hold adjudicated water rights can, within the framework of § 666(a)(2), commence among others such actions as described above, subjecting the United States, in a proper case, to the judgments, orders and decrees of the court having jurisdiction." *United States v. Hennen*, 300 F. Supp. 256, 263 (D. Nev. 1968); *see also S. Delta Water Agency*, 767 F.2d at 541 (quoting *Hennen*). *See also S. Delta Water Agency v. United States, Dep't of Interior, Bureau of Reclamation*, 767 F.2d 531, 541 (9th Cir. 1985) ("If plaintiffs' claim were reviewable merely because it relates to the administration of water rights, without plaintiffs first proving the validity of that claim, then the requirement of a general stream adjudication contained in subsection (1) would be superfluous; any party could gain review of agency action by arguing that it is merely seeking a subsection (2) administration, not a subsection (1) determination, of water rights").

Section 666(a)(2) contemplates a prior adjudication of water rights under § 666(a)(1). The

key question thus turns on whether § 666(a)(1) applies to either the instant suit or the *Santa Maria Valley Groundwater Litigation*.  The plain text of the McCarran Amendment states that consent is "given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, ***and the United States is a necessary party to such suit***."  43 U.S.C. § 666 (emphasis added).  The Superior Court did not hold the United States was a necessary party to the *Santa Maria Valley Groundwater Litigation*.  The *Santa Maria Valley Groundwater Litigation* did not involve the "adjudication" of the United States' water rights; it involved only competing rights to groundwater, in which the United States asserts no water rights.  Indeed, the stipulation in the groundwater litigation states: "[n]othing in this Stipulation affects or otherwise alters common law riparian rights or any surface water rights, unless expressly provided in this Stipulation."  Scharf Decl., Ex. A (Stipulation ¶ III(F)).  Petitioners rely on Section V(D)(1)(b) of the stipulation as proof that the *Santa Maria Valley Groundwater Litigation* adjudicated the United States' water rights.  That reliance is misplaced.  Section V(D)(1)(b) states: "(1) All Twitchell Project operations (operation and maintenance and capital projects) will be performed consistent with the following parameters (Operational Parameters): . . . (b) Operate the Twitchell Project in accordance with the requirements of applicable law, including, without limitation the requirements of the Bureau of Reclamation and Army Corps of Engineers."  Sharf Decl., Ex. A (Stipulation ¶ V(D)(1)(b)).  This provision does not adjudicate the Federal Defendants' water rights; it simply reinforces the requirement that management follow the Federal Defendants' requirements and comply with law.  As noted, the Federal Defendants were not joined as or held to be necessary parties to the groundwater litigation.  At most, the stipulation indirectly refers to the role of the BOR; it does not purport to adjudicate its water rights.

As to the instant case, even though the Superior Court held the United States is a necessary party, the case does not involve an "adjudication" of water rights within the meaning of § 666(a)(1).  The petition concerns compliance with state environmental laws.

1    Hence, the McCarran Amendment does not apply to the Federal Defendants in this action.

2    *See S. Delta Water Agency*, 767 F.2d at 541 ("Because there has been no prior adjudication of

3    relative general stream water rights in this case, there can be no suit 'for the administration of such

4    rights' within the meaning of the McCarran Amendment"); *see also Orff v. United States*, 358

5    F.3d 1137, 1143 n.3 (9th Cir. 2004) ("[T]hey are seeking to enforce rights they argue are

6    implicitly incorporated in the contract. Adjudication of general water rights in the prior cases is

7    therefore insufficient for a waiver of sovereign immunity under § 666(a)(2) in the case at bar").

8    Section (a)(1) of the McCarran Amendment does not apply.

9    Nor does the Petition seek an administration of the previously adjudicated water rights

10    under section (a)(2) of the McCarran Amendment. Petitioners herein seek to enforce state

11    environmental laws requiring sufficient flows of water for Steelhead, not to administer adjudicated

12    water rights in the ground water litigation. *Hennen*, 300 F. Supp. at 263. It is notable that the

13    requirement in the Stipulation that maintenance of the Twitchell Dam follow BOR's requirements

14    is not at issue here. The Petition does not seek to enforce the BOR's requirements. Instead,

15    Petitioners attempt to enforce California Fish and Game Code § 5937. The litigation pending in

16    this Court is not an adjudication or administration of Section V(d)(1)(B) of the Stipulation.

17    In sum, the purpose of the McCarran Amendment is not to waive sovereign immunity

18    whenever litigation may incidentally relate to water rights administered by the United States. It is

19    for determining substantive water rights by giving courts the ability to enforce those

20    determinations and to permit joinder of the United States where necessary to effectively adjudicate

21    competing claims thereto. There is no basis here to find that the Federal Defendants have waived

22    sovereign immunity for the litigation at bar under the McCarran Amendment. Because the Federal

23    Defendants have not waived sovereign immunity for this litigation, the Court **GRANTS** the

24    Federal Defendants' motion to dismiss.

25    B.    <u>Motion to Amend</u>

26    Petitioners seek to amend the Complaint to include an Endangered Species Act claim.

27
            In the absence of any apparent or declared reason – such as undue
28         delay, bad faith or dilatory motive on the part of the movant,
            repeated failure to cure deficiencies by amendments previously

1
2
3
4

> allowed, undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of amendment, etc. – the leave
> sought should, as the rules require, be "freely given." Of course, the
> grant or denial of an opportunity to amend is within the discretion of
> the District Court, but outright refusal to grant the leave without any
> justifying reason appearing for the denial is not an exercise of
> discretion; it is merely abuse of that discretion and inconsistent with
> the spirit of the Federal Rules.

5 *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Federal Defendants oppose the motion based on

6 the doctrine of derivative jurisdiction.

7
8
9
10
11
12
13
14
15
16
17

> The doctrine of derivative jurisdiction provides that "[i]f the state
> court lacks jurisdiction of the subject-matter or of the parties, the
> federal court acquires none [upon removal], although it might in a
> like suit originally brought there have had jurisdiction." *Lambert
> Run Coal Co. v. Baltimore & O.R. Co.*, 258 U.S. 377, 382; *see also
> Arizona v. Manypenny*, 451 U.S. 232, 242 n.17 (1981); *Minnesota v.
> United States*, 305 U.S. 382, 389 (1939). Where, for instance, a suit
> is removed to federal court because it involves a federal officer, the
> federal court exercises "a purely derivative form of jurisdiction,
> neither enlarging nor contracting the rights of the parties."
> *Manypenny*, 451 U.S. at 242 n.17; *see also In re Elko Cty. Grand
> Jury*, 109 F.3d 554, 555 (9th Cir. 1997); *Ethridge v. Harbor House
> Rest.*, 861 F.2d 1389, 1392 n.3 (9th Cir. 1988). The most common
> application of this doctrine appears to occur, ironically, where the
> federal court has exclusive jurisdiction. *See* Barry A. Lindahl, 1
> Modern Tort Law: Liability and Litigation § 14:16 (2d ed. 2017)
> ("[A]n action otherwise within the original and exclusive
> jurisdiction of the federal district court cannot be removed thereto
> because the state court could not have had subject-matter
> jurisdiction over such an action.").

18 *DeJohn v. United States Dep't of Agric.*, 2017 U.S. Dist. LEXIS 197413, at *3 (E.D. Cal. Nov. 29,

19 2017). It is the Federal Defendants' position that once the Court lacks subject matter jurisdiction,

20 it cannot grant leave to amend. While the doctrine of derivative jurisdiction has been abolished

21 for lawsuits arising from 28 U.S.C. § 1441, the doctrine still applies to cases where jurisdiction

22 arises, as in the instant case, under 28 U.S.C. § 1442. *See DeJohn v. United States Dep't of Agric.*,

23 2017 U.S. Dist. LEXIS 197413, at *5 (E.D. Cal. Nov. 29, 2017) (collecting cases).

24 As the Court no longer has jurisdiction over this matter, the Court must deny the motion to

25 amend without prejudice. *See DeJohn v. United States Dep't of Agric.*, 2017 U.S. Dist. LEXIS

26 197413, at *6 n.3 (E.D. Cal. Nov. 29, 2017); *Luevano v. Dawoodbhai*, 2018 WL 2315954, at *5

27 (C.D. Cal. May 18, 2018). The Court therefore remands the case at bar to state court.

28

13

### III.   CONCLUSION

For the reasons stated herein, the Court **GRANTS** the Federal Defendants' motion to dismiss.  The Court **DENIES** Petitioners' motion to amend without prejudice to file a new complaint.

This order disposes of Docket Nos. 15 and 29.


**IT IS SO ORDERED**.


Dated:  June 26, 2019

_____
EDWARD M. CHEN
United States District Judge